IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRIMEX PLASTICS CORPORATION,

                OPINION AND ORDER

        Plaintiff,

                15-cv-175-bbc

    v.

CURTIS ZAMEC,
THE NANCY L. ZAMEC REVOCABLE TRUST,
THE ZAMEC FAMILY TRUST,
THE CURTIS J. ZAMEC REVOCABLE TRUST,
THE ZAMEC MARITAL TRUST
and TRIENDA, LLC,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

From 2008 to 2010, plaintiff Primex Plastics Corporation sold various plastic products to defendant Trienda, LLC, under a credit agreement. However, Trienda started falling behind on its payments and failed to pay plaintiff approximately $2.7 million for invoiced goods. Plaintiff contends that Trienda, defendant Curtis Zamec (Trienda's majority owner) and several Zamec family trusts may be held liable for breach of fiduciary duty and violating the Wisconsin Fraudulent Transfers Act. In addition, plaintiff asks the court to order defendants to hold in trust the amount of money that they owe plaintiff.

Plaintiff has filed a motion for partial summary judgment with respect to its claims under the Wisconsin Fraudulent Transfers Act and its request for a constructive trust. Dkt. #13. Plaintiff argues that defendants violated the Act when Trienda transferred $7 million

to the Nancy Zamec Trust in December 2009 without getting anything of comparable value in return, even though defendants knew or should have known that the transfer would render Trienda unable to pay its debt to plaintiff. The parties recently agreed to dismiss the claims against Trienda, dkt. #41, but none of the parties suggest that Trienda's dismissal has any effect on plaintiff's claims against the other defendants. Both sides assume that the other defendants may be held jointly and severally liable for Trienda's conduct, at least for the purpose of plaintiff's motion, so I will do the same.

The parties agree that plaintiff must prove its claims under the Wisconsin Fraudulent Transfers Act by clear and convincing evidence. E.g., Operating Engineers Local 139 Health Benefits Fund v. Huml Contractors Inc., No. 08-C-1103, 2012 WL 664494, at *6 (E.D. Wis. Feb. 28, 2012); SJ Properties Suites v. STJ, P.C., 759 F. Supp. 2d 1032, 1043 (E.D. Wis. 2010); Mann v. Hanil Bank, 920 F. Supp. 944, 950 (E.D. Wis. 1996). Although plaintiff has submitted some evidence in favor of its claims, defendants have cited evidence that points in the other direction. Because I conclude that plaintiff's evidence is not sufficient to show as a matter of law that Trienda violated the Act and that there are genuine issues of material fact, I am denying plaintiff's motion for partial summary judgment.

OPINION

A. Subject Matter Jurisdiction

As a basis for jurisdiction, plaintiff relies on 28 U.S.C. § 1332, which requires diversity of citizenship between plaintiff and defendants and an amount in controversy more

than $75,000. Because plaintiff alleges that defendants owe millions of dollars, the amount in controversy requirement is met. As requested by the court, dkt. #40, plaintiff has filed supplemental materials showing diversity. Plaintiff is a citizen of New Jersey and Indiana, dkt. #29 at ¶ 1; Zamec is a citizen of Illinois and he is the sole trustee for each of the trusts. Dkt. ##42 and 43. Because Trienda has been dismissed from the case, I need not consider its citizenship.

B. <u>Merits</u>

Plaintiff raises claims under two related statutes that are both part of the Wisconsin Fraudulent Transfers Act, Wis. Stat. §§ 242.04(1) and 242.05(1):

> A transfer made or obligations incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Wis. Stat. § 242.04(1).

A transfer made or obligation incurred by a debtor is fraudulent as to a

3

creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Wis. Stat. § 242.05(1).

In its opening brief, plaintiff argues that Trienda violated four provisions: § 242.04(1)(a), § 242.04(1)(b)1, § 242.04(1)(b)2 and § 242.05(1). However, in its reply brief, plaintiff says nothing about § 242.04(1)(b)1, so I assume that plaintiff has abandoned that claim for the purpose of its motion for partial summary judgment and I will limit my analysis to the other three provisions.

1. Wis. Stat. § 242.04(1)(a)

The focus of the dispute under this provision is whether Trienda made the $7 million transfer to the trust with "actual intent" to avoid paying its debt to plaintiff. Of course, proving a party's mental state is a difficult thing to do in the context of a motion for summary judgment. If the party denies that it acted with the required intent and the party's testimony is not incredible as a matter of law, then the issue must be resolved by the factfinder rather than as a matter of law. In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) (court may not discredit witness testimony unless it is "utterly implausible in light of all relevant circumstances"); Day v. City of Baraboo, 06–C–188–C, 2007 WL 5633174 (W.D. Wis. Jan.31, 2007) (in case involving intent as element, "[o]nce the defendant testifies that he did not have a[n] [unlawful] motive . . . it would be the rarest of instances in which the

plaintiff could prevail at summary judgment. A court would have to conclude that the defendant was lying, but this is a determination almost always reserved for the factfinder.")

Not surprisingly, defendants deny that Trienda made the transfer to avoid paying plaintiff. Dfts.' PFOF ¶¶ 93-95, dkt. #39. (Defendants say that the transfer was part of Zamec's estate planning. Id. at ¶ 16.) Further, plaintiffs do not argue that defendants' testimony is incredible as a matter of law. Rather, plaintiff seems to concede that avoiding payment to plaintiff was not a factor in Trienda's decision to make the transfer. Plt.'s Resp. to Dfts.' PFOF ¶ 93, dkt. #39 (not disputing defendants' proposed finding of fact that transfer "had nothing to do with Primex").

Plaintiff attempts to circumvent this problem by arguing in the introduction portion of its opening brief that, "[u]nder Wisconsin law, there is no obligation to delve into the mind of the transferor" to prove "actual intent." Plt.'s Br., dkt. #14, at 3. Plaintiff does not explain this argument, but I understand plaintiff to be drawing an inference from Wis. Stat. § 242.04(2), which lists a number of objective factors that may inform the determination of "actual intent," such as "[t]he transfer or obligation was to an insider," "[t]he debtor retained possession or control of the property transferred after the transfer" and "[t]he transfer or the obligation was disclosed or concealed." Plaintiff seems to believe that it is entitled as a matter of law to a finding of "actual intent" if it can adduce evidence in support of some of the listed factors.

Plaintiff's reading of § 242.04(2) is not a reasonable one. The listed factors are not a statutory definition of "actual intent." Rather, § 242.04(2), states that, "[i]n determining

5

actual intent . . . . consideration may be given, among other factors, to" the listed factors. There is no indication that the statute is altering the ordinary meaning of "actual intent." Town of Hoard v. Clark County, 2015 WI App 100, ¶ 17, 366 Wis. 2d 239, 873 N.W.2d 241, 245 ("Statutory language is construed based on its common and ordinary meaning.").

Because mental status is difficult to prove, it is not unusual to use circumstantial evidence involving more objective facts in an attempt to prove intent indirectly. E.g., Whitley v. Albers, 475 U.S. 312, 320 (1986) (listing objective factors that may inform determination whether correctional officer used force "maliciously and sadistically for the very purpose of causing harm"). However, this does not mean that the plaintiff is excused from proving intent or that a finding of intent is compelled by circumstantial evidence. Rather, it simply means that a finder of fact *may infer* intent from that circumstantial evidence.

Not surprisingly, plaintiff does not cite any case law to support its counterintuitive proposition that "actual intent" is an objective standard. In their opposition brief, defendants cite Mann v. Hanil Bank, 920 F. Supp. 944, 952 (E.D. Wis. 1996), in which the court declined to decide this issue as a matter of law. Rather, despite strong objective evidence supporting many of the statutory factors, the court concluded that "a reasonable jury could conclude that the plaintiffs failed to establish intent to defraud by clear and convincing evidence, especially if it finds [the defendant's] story believable or his testimony credible." Because I agree with the approach taken in Mann and plaintiff does not cite any contrary authority, I am denying plaintiff's motion for summary judgment with respect to

§ 242.04(1)(a).

2. <u>Wis. Stat. § 242.04(1)(b)2</u>

With respect to this provision, the parties dispute whether plaintiff has satisfied two requirements: (1) whether Trienda received something of "reasonably equivalent value" for the transfer; and (2) whether Trienda "believed or reasonably should have believed" that it "would incur . . . debts beyond [its] ability to pay as they became due." Plaintiff must prove both of these requirements to prove a violation of this provision. Because I conclude that plaintiff has not proven the second requirement as a matter of law, I need not address the first at this stage of the proceedings.

In its opening brief, plaintiff says that Trienda knew or should have known that it would be unable to pay its debts to plaintiff after the $7 million transfer on December 30, 2009, to the trust because it foresaw even before the transfer that the company was in financial trouble. In support, plaintiff relies on two documents: (1) a December 20, 2009 email from Raymond Kolodziej (one of Trienda's vice presidents) to defendant Zamec and others, dkt. #18-16; and (2) a December 22, 2009 letter from Jan Acker (Trienda's president) to plaintiff, dkt. #17-2.

In the December 20 email, Kolodziej says that Trienda is adjusting its sale forecast downward "based upon the lower SAS demand in the first quarter of 2010." Dkt. #18-16. SAS was Trienda's biggest customer, accounting for nearly 90 percent of Trienda sales. Plt.'s PFOF ¶ 14, dkt. #29. Kolodziej explained the effect of the lower demand on the company:

7

> [A]ccounts receivable and inventory levels are substantially lower than we experienced in the last quarter of 2009. Since our ability to borrow under the proposed Fifth Third bank line is tied directly to our accounts receivable and inventory balances, our borrowing capacity has been significantly diminished during the first four months of 2010. To make matters worse, we must pay higher vendor payments for higher volume purchases in the last quarter of 2009 in the first two months of 2010. This "perfect storm" results in a $4.8 million cash shortfall in the first three months of 2010 . . . The deficit does not turn around until May 2010.

Id. Kolodziej recommended that Trienda "[n]egotiate extended terms with our vendor supply base" and "[n]egotioate higher lines of credit with our banks." Id.

In the December 22 letter to plaintiff, Acker wrote the following:

> [O]ur largest customer announced the undertaking of a Q1 2010 design modification material change in order to capture greater opportunities with their largest customer and others in the pooling marketplace.
>
> While we are very excited with the opportunities that lie ahead when this project is completed, the interim period will require making a transition which includes a draw down of the current pallet inventory, UL certification of the modified pallet and tooling conversion.
>
> As such, Trienda's product requirements for Q1 2010 will be proportionately reduced during the inventory draw down period. Requirements remain strong for the current product offering.
>
> Historically, our customer's forecasting has been on the conservative side and they have exceeded all forecasts and plans. We hope this to be the case in Q1 2010 as well.
>
> Having stated that, Trienda and the entire supply chain must respond to the reality at hand while still recognizing the upside potential.
>
> Going forward in Q1 2010, Trienda will be adjusting all supply chain payment terms to 75 days in coordination with the product transition timeline. Should the inventory draw down plan be accelerated and the current product requirements increase over forecase, Trienda would review and reassess the 75 day term requirement accordingly.

Dkt. #17-2.

In support of their argument that Trienda could have reasonably believed that it would be able to continue paying its debts, defendants cite a 2012 report prepared by the Capital Valuation Group that concluded that "Trienda was solvent after refinancing its debt and redeeming the membership interests on December 30, 2009." Dkt. #32-40 at 10. More specifically, the report concluded that Trienda could have "comfortably continued to meet its cash obligations for day-to-day operations as well as pay principal and interest on its term loans and reduce the line of credit balance" after the December 30, 2009 transfer. Id. at 11.

In addition, defendants say that Trienda had a *greater* ability to repay its debts after the transfer because the transfer was part of a new financing agreement with Fifth Third Bank. Under the new agreement, Trienda's total credit line increased by $3.5 million; Trienda's revolving credit line increased by $8 million; Trienda was subject to fewer covenant restrictions; Fifth Third gave Trienda better advance rates; and Trienda's loan payments were reduced by more than $100,000 a month. Dfts.' PFOF ¶ 31, dkt. #39.

More generally, defendants say that Trienda's failure to pay its debt to plaintiff had nothing to do with the transfer to the trust. Rather, defendants say the problem was that Trienda's primary customer, SAS, got into a warranty dispute with one of its own major customers in the spring of 2010 and stopped playing Trienda, which, in turn, had a dramatic effect on Trienda's ability to pay its bills. In addition, defendants say that the warranty dispute had nothing to do with SAS's previous slowdown, so Trienda could not have

predicted that problem.    Dfts.' PFOF ¶¶ 76-78, dkt. #39.

The letter and email are circumstantial evidence that Trienda knew or should have known at the time of the transfer that it would have greater difficulty paying its debts. However, I cannot say that plaintiff has proven a violation of Wis. Stat. § 242.04(2) as a matter of law.  To begin with, plaintiff does not develop an argument as to what plaintiff's actual assets and liabilities were at the time of the transfer, making it difficult to say for certain what Trienda could or could not pay.  (It was not until its reply brief that plaintiff submitted evidence regarding Trienda's actual payments after the transfer, dkt. #38, but that was too late.  Narducci v. Moore, 572 F.3d 313, 324 (7th Cir. 2009) ("[T]he district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.").)

Plaintiff treats the December 22 letter as an admission that Trienda could not pay its debts on time because Trienda stated that it might not be able to pay for products for 75 days, which was longer than the usual 30-day grace period.  However, plaintiff does not say it objected to those terms, and it continued shipping products to Trienda.  Thus, a reasonable jury could find that any new debts incurred after the transfer did not "bec[o]me due" for 75 days.  Because the letter does not indicate that Trienda's financial problems would be long-term, the letter does not prove as a matter of law that Trienda should have known that it would be unable to pay its debt to plaintiff.

Second, plaintiff does not develop an argument as to how the transfer contributed to any inability by Trienda to pay its debts.  The letter and email were written before the transfer and they do not suggest that Trienda's financial woes were caused by the transfer

or would be worsened by it.  In fact, plaintiff does not respond to defendants' argument that the transfer did not have an adverse effect on Trienda's financial status because the transfer was part of a larger financial arrangement that Trienda made with Fifth Third Bank and that gave Trienda more flexibility.  That is reason alone to deny plaintiff's motion for partial summary judgment on this issue.  Bonte v. United States Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

3.  Wis. Stat. § 242.05(1)

In its opening brief, plaintiff does not develop a separate argument regarding why it believes that Trienda "was insolvent at [the] time [of the transfer] or . . . became insolvent as a result of the transfer or obligation."  Wis. Stat. § 242.05(1).  Rather, it simply refers back to its argument that Trienda's December 22, 2009 letter shows that it was unable to pay its debts.  Because I have concluded that the letter does not show as matter of law what Trienda's financial status was, I am denying plaintiff's motion for summary judgment as to this claim as well.  Plaintiff includes a much more developed argument regarding § 242.05 in its reply brief, but, again, that was too late.  Narducci, 572 F.3d at 324.  Plaintiff will have to raise those arguments at trial.

4.  Constructive trust

Plaintiff's request for a constructive trust is contingent on a finding that Trienda violated Wisconsin Fraudulent Transfers Act. Because I am concluding that genuine issues

11

of material fact remain on plaintiff's claims under the Act, it would be premature to determine whether plaintiff is entitled to a constructive trust. Plaintiff does not argue that it is entitled to the creation of a trust as a prophylactic measure.

## ORDER

IT IS ORDERED that the motion for partial summary judgment filed by plaintiff Primex Plastics Corporation, dkt. #13, is DENIED.

Entered this 23d day of February, 2016.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge